**ALBERTA GAS CHEMICALS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.R.D. 80–1; Court No. 79–8–01295.**

United States Customs Court.

Jan. 17, 1980.

---

304

Freeman, Meade, Wasserman & Schneider, New York City (Jack Gumpert, Wasser-

man, Herbert Peter Larsen and Philip Yale Simons, New York City, of counsel) for plaintiff.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Commercial Litigation Branch and Sheila N. Ziff, Trial Atty., New York City, for defendant.

*On Defendant's Motion for Dismissal and Alternative Motion for Summary Judgment*

## INTRODUCTION

NEWMAN, Judge:

Plaintiff, an importer of methyl alcohol from Canada, contests the exclusion of its merchandise from entry by the Regional Commissioner of Customs at the port of New York. Presently before me are defendant's motion for dismissal on the grounds that the Court lacks jurisdiction of the subject matter and the action fails to present any justiciable issue; and alternatively, defendant's motion for summary judgment with respect to the merits of the complaint.

I have concluded that defendant's motions must be denied.

## THE FACTS

The facts pertinent to the instant motions are not in dispute, and may be briefly summarized:

On March 23, 1979 the Treasury Department ("Treasury") determined that methyl alcohol from Canada is being, or is likely to be, sold at less than fair value ("LTFV") within the meaning of section 201(a) of the Antidumping Act of 1921, as amended (19 U.S.C. § 160(a)). That determination was published in the *Federal Register* on March 30, 1979 (44 FR 19090).

On June 29, 1979 the United States International Trade Commission determined, in Investigation No. AA1921–202, that an industry in the United States is likely to be injured by reason of the importation of methyl alcohol from Canada which Treasury had determined is being, or is likely to be, sold at LTFV. The Commission's determination was published on July 12, 1979 (44 FR 40734).

On July 23, 1979 Treasury issued a Finding of Dumping respecting methyl alcohol from Canada (T.D. 79–210, which Finding was published in the *Federal Register* on July 27, 1979 (44 FR 44154).

The subject merchandise was exported from Canada on August 13, 1979. Entry papers (Customs Form 7501)[1] and a check for estimated duties were presented by plaintiff to the appropriate customs officer at the port of New York on August 15, 1979. However, the entry was rejected by Customs for the reason that the importer refused to file an Antidumping Bond (Customs Form 7591) in accordance with 19 U.S.C. § 167 and 19 C.F.R. § 153.50.[2] Attached to the proffered entry papers is a statement that plaintiff did not file a bond "for the reason that there exists no valid and legal finding under the Antidumping Act of 1921 which is applicable to this class or kind of merchandise, and that the finding of the Secretary of the Treasury, T.D. 79–210, 44 F.R. 44154 of July 27, 1979, purportedly made pursuant to section 201 of the Act is illegal, *ultra vires*, null and void, and that its publication was erroneous and contrary to law". Also attached to the tendered entry papers is a "Correction Slip" in which Customs advised: "Importer must obtain and present Antidumping Bond (Customs Form 7591). See C.R. § 153.50 and 19 U.S.C. § 167. T.D. 79–210 [the Finding of Dumping] applies".

The complaint in this action contests the exclusion of plaintiff's merchandise from entry and delivery "and the legality of all orders and findings of the United States International Trade Commission and of the Secretary of the Treasury entering into the Regional Commissioner's decision". In this connection, plaintiff alleges that the sole

---

1. Consumption entry No. 79–638078–8.

2. Plaintiff states in its brief that the subject merchandise is presently held in "General Order", awaiting the outcome of this case.

ground for the exclusion of the subject merchandise from entry was that plaintiff did not proffer an Antidumping Bond; and that the sole ground for the Regional Commissioner's demand for a bond was the Secretary's Finding of Dumping. Continuing, the complaint alleges that the Regional Commissioner erred in demanding, pursuant to section 208 of the Antidumping Act of 1921, as amended (19 U.S.C. § 167), the posting of an Antidumping Bond (Customs Form 7591), and in excluding the merchandise from entry and delivery to plaintiff in the absence of such bond; that the Secretary's Finding of Dumping is illegal, *ultra vires*, null and void; and that plaintiff is entitled to the entry and delivery of its merchandise without the posting of an Antidumping Bond because no legal and valid Finding of Dumping covers the merchandise. The complaint then sets forth three causes of action, each of which controverts some phase of the antidumping proceedings leading to the Secretary's Finding of Dumping, including the Secretary's LTFV investigation and determination, and the subsequent affirmative injury determination by the Commission. The relief sought by plaintiff in its complaint is an adjudication that the Secretary's Finding of Dumping is illegal, null and void; that the Antidumping Act of 1921 is therefore inapplicable to exportations of methyl alcohol from Canada; and an order that the Regional Commissioner accept plaintiff's entry and deliver the merchandise to plaintiff without filing an Antidumping Bond. The complaint does not challenge the assessment of any duty nor seek a refund.

## STATUTES INVOLVED

The statutory provisions involved, so far as pertinent, read:

*19 U.S.C. § 167*:

In the case of all imported merchandise * * * of a class or kind as to which the Secretary of the Treasury has made public a finding [of dumping] * * *, and delivery of which has not been made by the appropriate customs officer before such finding has been so made public * * *, it shall be unlawful for such customs officer to deliver the merchandise until [the importer] has * * * given bond to such customs officer * *.

*19 U.S.C. § 1514*:

(a) *Finality of decisions; return of papers*

Except as provided in section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by American manufacturers, producers, and wholesalers), section 1520 of this title (relating to refunds and errors), and section 1521 of this title (relating to reliquidations on account of fraud), decisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery under any provision of the customs laws;

(5) the liquidation or reliquidation of an entry, or any modification thereof;

(6) the refusal to pay a claim for drawback; and

(7) the refusal to reliquidate an entry under section 1520(c) of this title, shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Customs Court in accordance with section 2632 of Title 28 within the time prescribed by section 2631 of that title. When a judgment or order of the United States Customs Court has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the appropriate

customs officer, who shall take action accordingly.

\*    \*    \*    \*    \*    \*

*28 U.S.C. § 1582:*

(a) The Customs Court shall have exclusive jurisdiction of civil actions instituted by any person whose protest pursuant to the Tariff Act of 1930, as amended, has been denied, in whole or in part, by the appropriate customs officer, where the administrative decision, including the legality of all orders and findings entering into the same, involves: (1) the appraised value of merchandise; (2) the classification and rate and amount of duties chargeable; (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury; (4) the exclusion of merchandise from entry or delivery under any provisions of the customs laws; (5) the liquidation or reliquidation of an entry, or a modification thereof; (6) the refusal to pay a claim for drawback; or (7) the refusal to reliquidate an entry under section 520(c) of the Tariff Act of 1930, as amended.

\*    \*    \*    \*    \*    \*

### PARTIES' CONTENTIONS

The nub of defendant's motion to dismiss is that plaintiff has not raised any issues which may properly be considered by this Court in reviewing an administrative decision (including the legality of all orders and findings entering into the same) as to the exclusion of merchandise from entry or delivery under any provision of the customs law.[3] Specifically, defendant's position is that, until an entry has been liquidated and dumping duties assessed, no justiciable issue can be presented concerning the administrative findings and determinations made in the antidumping proceedings, and therefore this action was brought prematurely. Defendant further maintains that plaintiff's

action is, in essence, one for a declaratory judgment, which this Court is without jurisdiction to grant.

The gravamen of plaintiff's complaint is that its merchandise has been wrongfully excluded from entry and delivery under the provisions of the customs laws requiring the filing of an Antidumping Bond (19 U.S.C. § 167; 19 C.F.R. § 153.50); that this Court possesses jurisdiction under 28 U.S.C. § 1582(a)(4) to review the denial of a protest against such exclusion, including the legality of all orders and findings entering into the same. On the latter aspect, plaintiff urges that an Antidumping Bond was demanded by Customs because of the Secretary's Finding of Dumping (and the underlying determinations in the antidumping proceeding), and consequently the legality of the Finding presents a justiciable issue within the Court's jurisdiction under 28 U.S.C. § 1582(a)(4) to review "the legality of all orders and findings entering into the [exclusion]".

### THE ISSUE

As may be noted, under 28 U.S.C. § 1582(a)(4) this Court has exclusive jurisdiction to review the denial of a protest against "the exclusion of the merchandise from entry or delivery under any provisions of the customs laws", and "the legality of all orders and findings entering into the same". The crux of the issue in this case is whether the Finding of Dumping and administrative determinations in the antidumping proceedings contested in the complaint constitute "orders and findings entering into" the administrative decision excluding the merchandise from entry.

### OPINION

Preliminarily, it should be observed there is no dispute that under 28 U.S.C. § 1582(a) this Court has jurisdiction over an action

---

**3.** Defendant's reply brief (p. 2) contends that "the only matters reviewable at this time would be those relating to the bond requirements, such as the validity of the foregoing provisions [19 U.S.C. § 167 and 19 C.F.R. §§ 153.50 and 153.51(b)], a claim of procedural irregularity

pertaining to the bond requirement, or an assertion that the dumping finding is inapplicable to the involved merchandise (e. g., that the subject shipment is not methyl alcohol or is not from Canada)".

brought by an importer contesting an assessment of dumping duties and all underlying administrative determinations. Thus, "[i]n such cases [the Customs Court] may review the actions of the Secretary of the Treasury and the Tariff Commission [now United States International Trade Commission] to determine whether the procedures prescribed by Congress have been followed and whether the Secretary, the Tariff Commission, or their delegates have proceeded within the statutory authority or whether their actions are *ultra vires* and void". *Matsushita Electric Industrial Company, Ltd., et al. v. United States Treasury Department et al.*, 67 Cust.Ct. 328, 331, C.D. 4292 (1971), aff'd, 485 F.2d 1402, 60 CCPA 85, C.A.D. 1086 (1973), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973).

But here, there has been no assessment of dumping duties. Indeed, the subject merchandise has been excluded from entry, and plaintiff predicates this Court's jurisdiction on 28 U.S.C. § 1582(a)(4), pursuant to which this Court may review the denial of a protest against the exclusion of merchandise from entry or delivery under any provision of the customs laws, including the legality of *all* orders and findings entering into the same.

As we have seen, the merchandise was excluded from entry and delivery solely because of plaintiff's refusal to file the Antidumping Bond required by 19 U.S.C. § 167 and the Customs Regulations, cited *supra*. Plaintiff insists that it is entitled to entry and delivery of the subject merchandise without filing an Antidumping Bond on the ground that the Finding of Dumping is illegal, null and void.

Plainly, the legality of Customs' demand for a bond and the exclusion of the merchandise from entry because of plaintiff's refusal to file a bond rest upon the legality of the underlying Finding of Dumping. If that finding is valid, then Customs' demand for a bond is unquestionably correct. If, on the other hand, the Secretary's Finding is invalid, as claimed by plaintiff, then the insistence of Customs upon the filing of a bond is erroneous, and plaintiff is entitled

to acceptance of its proffered entry and the delivery of the subject merchandise (assuming all other entry requirements have been satisfied).

■ If plaintiff had complied with Customs' demand for the posting of an Antidumping Bond and entered its merchandise, any issue raised after entry concerning the legality of the exclusion for refusal to file a bond would be moot. Since the Court is not empowered to decide moot questions, plaintiff acted appropriately and within its rights in refusing to file a bond and presenting the issue of the legality of the exclusion of its merchandise from entry pursuant to 19 U.S.C. § 1514(a)(4) and 28 U.S.C. § 1582(a)(4). *Cf. Southwestern Sugar & Molasses Co., Inc. v. United States*, 21 Cust.Ct. 8, C.D. 1117 (1948). Plaintiff's claim falls within a class of administrative decisions which are contestable prior to liquidation and payment of duties. *Schenley Distillers, Inc. v. United States*, 65 Cust.Ct. 651, C.D. 4152 (1970); *Central Commodities Corp. v. United States*, 6 Cust.Ct. 452, C.D. 514 (1941). Further, inasmuch as plaintiff's action falls squarely within the relief this Court may grant under 28 U.S.C. § 1582(a)(4), defendant's contention that plaintiff's action calls for a declaratory judgment is totally without merit.

The right of the plaintiff to challenge an underlying finding entering into the exclusion of its merchandise from entry is expressly authorized by that portion of 19 U.S.C. § 1514(a) which provides for filing of a protest against "decisions of the appropriate customs officer, *including the legality of all orders and findings entering into the same*". (Emphasis added.) It is true that the Finding of Dumping *per se* did not exclude the merchandise from entry. Nevertheless, the Secretary's Finding is inextricably linked to and bound up with the subsequent chain of events: Customs' demand for an Antidumping Bond (predicated upon the Finding), plaintiff's refusal to file such bond, and the ultimate exclusion of the merchandise from entry because of that refusal. Hence, I conclude that the Secretary's Finding of Dumping entered into the

administrative decision excluding the merchandise from entry and delivery; and that the complaint presents justiciable issues respecting the legality of that Finding within the jurisdiction of this Court under 28 U.S.C. § 1582(a)(4). Defendant's highly restrictive interpretation of the statute to the contrary is not supported by any legislative history called to my attention, and I find that prior judicial decisions relied on by defendant are readily distinguishable.

Defendant relies heavily on my prior decision in *Alberta Gas Chemicals, Inc. v. W. Michael Blumenthal, Secretary of the Treasury, et al.,* 467 F.Supp. 1245, 82 Cust.Ct. 77, C.D. 4792 (1979). There, the plaintiff challenged the validity of the Treasury's antidumping investigation prior to liquidation and assessment of dumping duties, and brought an action for a declaratory judgment and ancillary relief pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiff moved for summary judgment, and defendant cross-moved for dismissal on the ground that the statutory prerequisites for invoking the Court's jurisdiction under 28 U.S.C. § 1582 had not been complied with. In granting defendant's motion to dismiss for lack of jurisdiction, I rejected plaintiff's argument that it was contesting an order or finding entering into a *"charge or exaction"* within the purview of subdivision (a)(3) of sections 1582 and 1514. Moreover, in the prior case, since no Finding of Dumping was in effect, no Antidumping Bond could be demanded, and there was no exclusion of merchandise from entry or delivery. However, the thrust of plaintiff's present action is to challenge an exclusion of its merchandise from entry as authorized by subdivision (a)(4) of sections 1582 and 1514, which makes the prior case irrelevant to the present issue. The other cases cited by defendant for the proposition that plaintiff's action is premature[4] are distinguishable for the same reason, viz., they did not involve an action against exclusion of merchandise from entry, and thus the Court's jurisdiction under 28 U.S.C. § 1582(a)(4) was not invoked, as in the instant case.

Additionally, defendant argues that *Central Commodities Corp. v. United States,* 6 Cust.Ct. 452, C.D. 514 (1941) is controlling on the facts in the instant case. In *Central Commodities,* plaintiff filed a protest against the Collector's exclusion of merchandise from entry because of the plaintiff's failure to deposit (in addition to a bond covering estimated countervailing duties and a certified check for regular import duties) payment of estimated countervailing duties of 25 percent. Plaintiff sought an order directing the Collector to permit entry and accept the deposit of duty which the plaintiff estimated was due. In addition to the issue concerning the correct estimated duties to be deposited upon entry, plaintiff attempted to argue the issue as to whether the merchandise was subject to countervailing duties. Respecting the latter, Judge Cline commented (6 Cust.Ct. at 455): "That argument relates to the rate or amount of duties and the law gives the importer the right to protest against the rate or amount of duties within 60 days after, but not before, liquidation."

In short, *Central Commodities Corp.* is clearly distinguishable from the present case, since here plaintiff's challenge to the legality of the Finding of Dumping *as underlying the imposition of an Antidumping Bond* does not involve any question of rate or amount of duties.

Defendant also cites in support of its position *McKesson & Robbins (Inc.) v. United States,* 43 Treas.Dec. 214, T.D. 39511 (1923) and *S. J. Charia & Co. v. United*

---

4. *J. C. Penney Company, Inc. v. United States Treasury Department,* 439 F.2d 63 (C.A. 2, 1971), *cert. denied,* 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971); *In re N. C. Trading, A Division of Minemet Metals, Inc.,* 586 F.2d 221, 66 CCPA ——, C.A.D. 1215 (1978); *Matsushita Electric Industrial Company, Ltd., et al. v. United States Treasury Department et al.,* 67 Cust.Ct. 328, C.D. 4292 (1971), *aff'd,* 485 F.2d 1402, 60 CCPA 85, C.A.D. 1086 (1973), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973); *Dexter v. United States,* 424 F.Supp. 1069, 78 Cust.Ct. 179, C.R.D. 77–1 (1977); *Flintkote Company, Glens Falls Division v. W. Michael Blumenthal, Secretary of the Treasury,* Civil Action 78–CV–640 (N.D.N.Y.1979) (unreported memorandum decision), *aff'd,* 596 F.2d 51 (C.A. 2, 1979).

*States,* 135 F.Supp. 727, 33 Cust.Ct. 107, C.D. 1642 (1954), *aff'd,* 248 F.2d 124, 43 CCPA 147, C.A.D. 622 (1956).

In *McKesson,* the Board of General Appraisers (predecessor of the Customs Court) held that the Collector's refusal to accept tender of an entry for withdrawal and transportation in bond to the port of New Orleans, of opium which had been imported into New York, was properly protestable under section 514 of the Tariff Act of 1922. Noting that the Collector had refused to accept entry in accordance with certain regulations of the Federal Narcotics Control Board allowing crude opium to be entered for transportation in bond only between certain designated ports, which did not include New Orleans, the Board stated that *the sole issue presented was whether or not the Federal Narcotics Control Board exceeded its statutory power in promulgating the regulations cited by the Collector as authority for his decision refusing the tendered entry of the importer.*

And in *Charia,* the Collector excluded from entry certain cigar lighters that were sought to be imported into the United States by plaintiff. The exclusion of plaintiff's entry was predicated upon a Presidential order issued pursuant to the provisions of section 337 of the Tariff Act of 1930 relating to unfair practices in the import trade. Plaintiff contested the exclusion *by disputing that the underlying Presidential order was applicable to its merchandise and challenging the constitutionality of that order.*

Neither *McKesson* nor *Charia* supports the narrow construction of 28 U.S.C. § 1582(a)(4) urged by defendant. Rather, these cases support plaintiff's claim that, under the "exclusion jurisdiction" of this Court, the legality of all underlying findings and orders (and regulations) may be determined. As I construe the relevant jurisdictional statutory provisions herein, it is entirely appropriate for plaintiff to challenge the underlying findings entering into the exclusion of its merchandise from entry for refusal to file an Antidumping Bond, and plaintiff was not required to make en-

try and await a liquidation and assessment of dumping duties. The fact that the Finding of Dumping (and underlying determinations) sought to be challenged by plaintiff in this action could be contested after entry, liquidation and assessment of dumping duties does not preclude plaintiff from proceeding expeditiously in this action against exclusion to protect any present rights it may have to enter its merchandise without filing an Antidumping Bond. This approach is consistent with those cases relied upon by defendant wherein the Court held that an importer whose entry is rejected has a cause of action arising out of the refusal to accept the entry, as well as a *separate* cause of action arising out of liquidation of the entry. See *A. N. Deringer, Inc. v. United States,* 37 Cust.Ct. 166, C.D. 1818 (1956), and *Border Brokerage Co. v. United States,* 43 Cust.Ct. 226, C.D. 2131 (1959), *rev'd on other grounds,* 48 CCPA 10, C.A.D. 754 (1960).

We reach defendant's contention that if plaintiff's position herein is accepted, other importers by refusing to comply with an entry requirement will be able to obtain expeditious judicial review under 28 U.S.C. § 1582(a)(4) of contested classifications, valuations and a wide range of other administrative decisions without payment of any liquidated duties. I find no merit in that argument since under 28 U.S.C. § 1582(a)(4), this Court may review only the legality of orders and findings *entering into the exclusion of merchandise from entry or delivery.* Hence, only where the classification of merchandise enters into the administrative decision excluding the merchandise from entry or delivery could the classification be contested prior to liquidation. For example, in *Western Dairy Products, Inc. v. United States,* 373 F.Supp. 568, 72 Cust.Ct. 75, C.D. 4506 (1974), *aff'd,* 510 F.2d 376, 62 CCPA 37, C.A.D. 1142 (1975), the issue was whether certain calcium reduced dried skim milk was classifiable under the TSUS as an article of milk and thus subject, as Customs determined, to certain license requirements proclaimed by the President pursuant to the Agricultural Adjustment Act, or classifiable

under the TSUS as an edible preparation, not specially provided for. Customs refused to allow the withdrawal of the merchandise from warehouse for consumption because of plaintiff's failure to obtain a license from the Secretary of Agriculture. Plaintiff having failed to establish that the import was not an article of milk, as classified by Customs, the Court held that the merchandise was subject to the license, and the Government's decision refusing to release the product for consumption in the United States without a license was sustained.

Finally, we consider plaintiff's reference to section 1001(a) of the Trade Agreements Act of 1979, Pub.L.No.96–39, 93 Stat. 300 *et seq.* which became effective January 1, 1980. On this aspect, plaintiff correctly points out that a new section 516A of the Tariff Act of 1930 (as enacted by section 1001(a) of the Trade Act) greatly expands the opportunity for judicial review in this Court of the administrative determinations in countervailing and antidumping duty matters prior to the imposition of such duties.[5] While these new provisions, which expedite judicial review, are undoubtedly salubrious, I must agree with defendant's contention that they have no applicability in the instant case.

and in that connection to decide the legality of the Secretary's underlying. Finding of Dumping (T.D. 79–210). Accordingly, I hold that the complaint presents justiciable issues that may be determined in this action; and therefore, defendant's motion to dismiss is denied.

Defendant's alternative motion for summary judgment is premature and therefore not properly before the Court at this juncture. Rule 8.2(a) of this Court provides that a motion for summary judgment may be made *"at any time after a responsive pleading has been filed"*. (Emphasis added). Defendant has not filed an answer or other responsive pleading to the complaint. Hence, defendant's suggestion that the Court ignore the procedural requirements of its own Rule 8.2(a) and instead follow Rule 56(b) of the Federal Rules of Civil Procedure, which allows the party against whom a claim is asserted to move, at any time, for a summary judgment, is without merit.[6] Accordingly, defendant's alternative motion for summary judgment respecting the merits of the complaint is denied. Defendant shall serve and file its answer to the complaint within thirty (30) days after service of this order.

## CONCLUSION

For the reasons stated herein, I have concluded that pursuant to 28 U.S.C. § 1582(a)(4) this Court clearly has jurisdiction to determine the legality of the exclusion of plaintiff's merchandise from entry for refusal to file an Antidumping Bond,

5. Under section 516A(a)(2)(A), an action may be commenced by any person with standing within thirty days after the date of publication in the *Federal Register* of any antidumping or countervailing order or notice of determination.

6. Rule 8.2(b), as amended on January 1, 1980, permits a party against whom a claim is asserted to move for a summary judgment at any time after the filing of a complaint. This amendment is applicable to *"further proceedings"* in actions then pending, except to the extent that in the opinion of the court [its] application in a particular action then pending would not be feasible or would work injustice, in which event the former procedure applies"

(emphasis added). In the instant case, both defendant's alternative motion for summary judgment and plaintiff's opposition thereto were filed prior to January 1, 1980 in reliance upon the provisions of old rule 8.2, and hence are *pending* proceedings rather than "further proceedings". Indeed, neither plaintiff nor defendant made any reference whatever to the proposed new rule. Moreover, plaintiff's memoranda do not address the merits of the case. Under these circumstances, it is clear that the new rule has no application in this case, and in any event its application would "work injustice" to plaintiff.